*E-FILED - 5/29/08*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID LITMON, JR., <br><br> Plaintiff, <br><br> vs. <br><br> SANTA CLARA COUNTY, et al., <br><br> Defendants. | No. C 00-20345 RMW (PR) <br><br> ORDER REOPENING CASE AND VACATING JUDGMENT; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR RELIEF; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; ORDER REFERRING CASE TO PRO SE PRISONER SETTLEMENT PROGRAM; INSTRUCTIONS TO CLERK <br><br> (Docket Nos. 105, 106,) |

Plaintiff, a civil detainee under California's Sexually Violent Predator Act, (California Welfare & Institutions Code § 6600 et seq.) ("SVPA"), filed a pro se civil rights complaint under 42 U.S.C. § 1983. The court partially dismissed the complaint with leave to amend. Plaintiff filed a first amended complaint ("FAC") on September 8, 2000. The court ordered service of the amended complaint on all defendants on March 21, 2002.

On April 2, 2003, the court granted summary judgment as to claims one and four of the amended complaint in favor of defendants Santa Clara County, Donald F. Gage, Blanca

1  Alvarado, James T. Beall, S. Joseph Simitian, Pete McHugh, and the Santa Clara County Board
2  of Supervisors. Plaintiff filed a notice of appeal with the Ninth Circuit Court of Appeals. The
3  Ninth Circuit Court held that it did not have jurisdiction because claims were still pending
4  against the remaining ten defendants. The case was remanded to this court on December 16,
5  2003. However, it appears that the case was not administratively reopened and the court's
6  earlier judgment has not been vacated. Accordingly, the court will REOPEN the instant action
7  and VACATE the April 21, 2003 judgment.

8  On September 3, 2004, the court denied plaintiff's motion for entry of default against the
9  remaining defendants and issued a further order of service on these defendants. Plaintiff has
10 filed a motion for relief from the court's April 2, 2003 order pursuant to Fed. R. Civ. P. 60(b).
11 On January 24, 2005, defendants Overstreet, Vaughn, Valeros, Kennedy, Ryan, King, Vasquez,
12 Smith, Carter, and West ("defendants") filed a motion for summary judgment. Plaintiff filed an
13 opposition and defendants have filed a reply. For the reasons set forth below, plaintiff's motion
14 for relief (docket no. 105) is GRANTED in part and DENIED in part. Defendants' motion for
15 summary judgment (docket no. 106) is GRANTED in part and DENIED in part. The court will
16 REFER the instant case to the Pro Se Prisoner Settlement Program and STAY this action
17 pending settlement conference proceedings with Magistrate Judge Vadas.

**DISCUSSION**

A.  Plaintiff's Motion for Relief

Plaintiff filed a motion for relief pursuant to Fed. R. Civ. P. 60(b)(6) from the court's
April 2, 2003 order granting summary judgment as to claims one and four of the amended
complaint in favor of defendants Santa Clara County, Donald F. Gage, Blanca Alvarado, James
T. Beall, S. Joseph Simitian, Pete McHugh, and the Santa Clara County Board of Supervisors.

Motions for reconsideration should not be frequently made or freely granted; they are not
a substitute for appeal or a means of attacking some perceived error of the court. See Twentieth
Century - Fox Film Corp. v. Dunnahoo, 637 F.2d 1338, 1341 (9th Cir. 1981). "'[T]he major
grounds that justify reconsideration involve an intervening change of controlling law, the

1  availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"
2  Pyramid Lake Paiute Tribe of Indians v. Hodel, 882 F.2d 364, 369 n.5 (9th Cir. 1989) (quoting
3  United States v. Desert Gold Mining Co., 433 F.2d 713, 715 (9th Cir. 1970)).

4       Rule 60(b) provides for reconsideration where one or more of the following is shown: (1)
5  mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by
6  due diligence could not have been discovered before the court's decision; (3) fraud by the
7  adverse party; (4) the judgment is void; (5) the judgment has been satisfied; (6) any other reason
8  justifying relief. Fed. R. Civ. P. 60(b); School Dist. 11 v. ACandS Inc., 5 F.3d 1255, 1263 (9th
9  Cir.1993). "Rule 60(b) [] provides a mechanism for parties to seek relief from a judgment when
10 "it is no longer equitable that the judgment should have prospective application," or when there
11 is any other reason justifying relief from judgment. Jeff D. v. Kempthorne, 365 F.3d 844, 853-
12 54 (9th Cir. 2004) (quoting Fed. R. Civ. P. 60(b)).

13      Rule 60(b)(6) is a "catchall provision" that applies only when the reason for granting
14 relief is not covered by any of the other reasons set forth in Rule 60. Samish Indian Tribe v.
15 Washington, 394 F.3d 1152, 1157 (9th Cir. 2005). "It has been used sparingly as an equitable
16 remedy to prevent manifest injustice and is to be utilized only where extraordinary
17 circumstances prevented a party from taking timely action to prevent or correct an erroneous
18 judgment." Id. (internal quotations omitted). Mere dissatisfaction with the court's order or
19 belief that the court is wrong in its decision are not adequate grounds for relief. Twentieth
20 Century - Fox Film Corp., 637 F.2d at 1341.

21      Here, Plaintiff requests that the court grant him relief from its April 2, 2003 order
22 granting summary judgment in favor of the County of Santa Clara and the individual Santa Clara
23 County Board of Supervisors) as to claims one and four in the first amended complaint. Plaintiff
24 relies on the Ninth Circuit's decision in Jones v. Blanas, 393 F.3d 918 (9th Cir. 2004). In Jones,
25 the court held that a civil detainee awaiting adjudication is entitled to conditions of confinement
26 that are not punitive. Id. at 932. A restriction is punitive where it is intended to punish, or where
27 it is excessive in relation to its non-punitive purpose, or is employed to achieve objectives that
28

1 could be accomplished in many alternative and less harsh methods. Id. at 933-34 (citations
2 omitted). Legitimate, non-punitive government interests include ensuring a detainee's presence
3 at trial, maintaining jail security, and effective management of a detention facility. Id. at 932. In
4 Jones, the Ninth Circuit remanded the action with instructions to allow the government to
5 demonstrate legitimate, non-punitive interests justifying the conditions of a detainee awaiting
6 SVPA proceedings, and to show that the restrictions imposed on the detainee were not excessive
7 in relation to these interests.

Based upon the Ninth Circuit's holding in Jones, plaintiff's motion for relief (docket no. 105) as to his due process and equal protection claims based upon his detention with the general prison population in the county jail while awaiting commitment proceedings is GRANTED as to defendant the County of Santa Clara. To the extent such claims are being reinstated as to the County of Santa Clara, it serves no useful purpose to also reinstate such claims against the individual county supervisors, who are sued in their official capacity, because claims against the supervisors in their official capacity are treated as claims against the county itself. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (suit against state official in official capacity is a suit against the state); Ruvalcaba v. City of Los Angeles, 167 F.3d 514, 524 n.3 (9th Cir. 1999) (official capacity claim against police chief treated as claim against the city of Los Angeles). Consequently, Plaintiff's motion for relief (docket no. 105) is DENIED as to the claims against defendants Board of Supervisors and the individual county supervisors. Plaintiff's motion for relief (docket no. 105) is also DENIED as to his equal protection claim of differential treatment compared to civil detainees under the Lanterman-Petris-Short Act and as to his additional claims.

B.     Motion for Summary Judgment

    **1.     Standard of Review**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.

1  Civ. P. 56(c).  The purpose of summary judgment "is to isolate and dispose of factually
2  unsupported claims or defenses." Celotex v. Catrett, 477 U.S. 317, 323-324 (1986).
3        The moving party "always bears the initial responsibility of informing the district court
4  of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers
5  to interrogatories, and admissions on file, together with the affidavits, if any' which it believes
6  demonstrate the absence of a genuine issue of material fact." Id. at 323.  If he meets this burden,
7  the moving party is then entitled to judgment as a matter of law when the non-moving party fails
8  to make a sufficient showing on an essential element of his case with respect to which he bears
9  the burden of proof at trial.  Id. at 322-23.
10        The non-moving party "must set forth specific facts showing that there is a genuine issue
11  for trial." Fed. R. Civ. P. 56(e).  The non-moving party cannot defeat the moving party's
12  properly supported motion for summary judgment simply by alleging some factual dispute
13  between the parties.  To preclude the entry of summary judgment, the non-moving party must
14  bring forth material facts, i.e., "facts that might affect the outcome of the suit under the
15  governing law . . .  Factual disputes that are irrelevant or unnecessary will not be counted."
16  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The opposing party "must do
17  more than simply show that there is some metaphysical doubt as to the material facts."
18  Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 588 (1986).
19        The court must draw all reasonable inferences in favor of the non-moving party,
20  including questions of credibility and of the weight to be accorded particular evidence. Masson
21  v. New Yorker Magazine, Inc., 111 S. Ct. 2419, 2434-35 (1991) (citing Anderson, 477 U.S. at
22  255); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 588 (1986); T.W. Elec. Service
23  v. Pacific Elec. Contractors, 809 F.2d 626, 630 (9th Cir. 1987).  It is the court's responsibility "to
24  determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed
25  background or contextual facts, are such that a rational or reasonable jury might return a verdict
26  in its favor based on that evidence." T.W. Elec. Service, 809 F.2d at 631.  "[S]ummary judgment
27  will not lie if the dispute about a material fact is 'genuine,' that is if the evidence is such that a
28

reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587.

### 2. Claim Against Defendant Dana Overstreet

In plaintiff's first amended complaint, he alleges that defendant Overstreet, in her official capacity as an Assistant District Attorney, caused, implemented, and directed that plaintiff be treated differently by . . . causing, implementing, and directing that persons prosecuted under the LPS Act to be confined at Santa Clara County medical facilities and [causing] implementing, and directing that plaintiff be confined at Santa Clara County Correctional facilities while awaiting civil commitment proceedings under the SVPA." FAC at 8. Plaintiff further alleges that defendant Overstreet knowingly caused, implemented and directed the denial of the protection of plaintiff's civil rights and that plaintiff be confined under conditions of confinement that are "punishment." Id.   Defendants contend that defendant Overstreet is not a state actor for purposes of § 1983. Plaintiff responds that Overstreet was acting as a county agent when conducting civil commitment proceedings under the SVPA.

42 U.S.C. § 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).   To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda County, 811 F.2d 1243, 1245 (9th Cir. 1987).

A prosecutor performing an advocate's role is an officer of the court entitled to absolute immunity. Buckley v. Fitzsimmons, 509 U.S. 259, 272-73 (1993). Prosecutors therefore are absolutely immune from liability for their conduct as "advocates" during the initiation of a criminal case and its presentation at trial. Id.; Imbler v. Pachtman, 424 U.S. 409, 431 (1976). Whether the government attorney is representing the plaintiff or the defendant, or is conducting a

1  civil trial, criminal prosecution or an agency hearing, absolute immunity is necessary to assure
2  that they can perform their respective functions without harassment or intimidation.  See Fry v.
3  Melaragno, 939 F.2d 832, 837 (9th Cir. 1991).  The "reasons supporting the doctrine of absolute
4  immunity apply with equal force regardless of the nature of the underlying action."  Id. (citing
5  Flood v. Harrington, 532 F.2d 1248, 1251 (9th Cir. 1976)).  The touchstone of this immunity is
6  that the attorney's actions are "intimately" or "closely" associated with the judicial process.  Id.
7  If the government attorney is performing acts "intimately associated with the judicial phase" of
8  the litigation, that attorney is entitled to absolute immunity from damage liability.  Id.

9        The court concludes that defendant Overstreet is entitled to absolute immunity for her
10 actions in initiating proceedings against plaintiff under the SVPA and for plaintiff's confinement
11 during this proceeding.  Defendant Overstreet's duties in prosecuting plaintiff under the SVPA
12 constitute acts that are "intimately associated with the judicial process."  Although the SVPA
13 proceedings are classified as civil proceedings, this does not change the nature of Overstreet's
14 actions.

15       Plaintiff also alleges that defendant Overstreet engaged in a conspiracy with defendants
16 Vaughn, Valeros, Kennedy and the County Board of Supervisors to treat him differently than
17 other individuals detained under other civil statutory schemes.  The court finds that plaintiff's
18 conclusory allegation of the existence of a conspiracy is not sufficient at this stage of the
19 proceedings.  A "'mere allegation of conspiracy without factual specificity is insufficient.'"
20 Johnson v. California, 207 F.3d 650, 655 (9th Cir. 2000) (quoting Karim-Panahi v. Los Angeles
21 Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988)), reversed on other grounds by Johnson v.
22 California, 125 S. Ct. 1141 (2005).  For a conspiracy claim, the plaintiff must allege specific
23 actions in furtherance of a conspiracy, including a "meeting of the minds" to deprive him of his
24 constitutional rights and a deprivation resulting from the alleged conspiracy.  See Woodrum v.
25 Woodward County, Okl., 866 F.2d 1121, 1126 (9th Cir. 1989).  Here, plaintiff's mere allegation
26 of a conspiracy without any factual support is not sufficient.  While plaintiff alleges the
27 defendants all had personal knowledge of certain facts, he does not allege a "meeting of the
28

minds" to deprive him of his constitutional rights.

Plaintiff contends that the defendants failure to specifically deny the existence of a conspiracy requires that summary judgment be denied on this claim. However, plaintiff's conspiracy claim also fails because it does not allege a constitutional violation under the Fourteenth Amendment. Plaintiff claims that he was treated differently than other similarly situated civilly committed individuals in violation of the Fourteenth Amendment. However, sexually violent predators under the SVPA are not similarly situated with those committed under other civil commitment schemes. See Hubbart v. Superior Court, 19 Cal. 4th 1138, 1168-70 (1999); People v. Green, 79 Cal. App. 4th 921, 924-27 (2000); People v. Buffington, 74 Cal. App. 4th 1149, 155-64 (1999). Accordingly, defendant Overstreet is entitled to summary judgment as a matter of law.

**3.    Claims Against Defendants Vaughn, Valeros, and Kennedy**

Plaintiff names Santa Clara County Public Defenders Vaughn, Valeros and Kennedy as defendants. Plaintiff alleges that these defendants were appointed to represent him during his civil commitment proceedings under the SVPA in 1999. Plaintiff maintains that he complained repeatedly to these defendants about his conditions of confinement at the county jail and requested that the defendants have him confined at the county medical facility, with other similarly situated detainees. However, plaintiff states that the defendants refused and told plaintiff that he was in jail to protect society. FAC at 9-10.

A public defender does not act under color of state law, an essential element of an action under 42 U.S.C. § 1983, when performing a lawyer's traditional functions, such as entering pleas, making motions, objecting at trial, cross-examining witnesses, and making closing arguments. Polk County v. Dodson, 454 U.S. 312, 318-19 (1981). It matters not that the public defender failed to exercise independent judgment or that he was employed by a public agency; it is the nature and context of the function performed by the public defender that is determinative under Polk County. Miranda v. Clark County, Nevada, 319 F.3d 465, 468 (9th Cir.) (en banc), cert. denied, Clark County, Nev. v. Miranda, 540 U.S. 814 (2003).

Here, defendants Vaughn, Valeros, and Kennedy were performing their functions as plaintiff's counsel representing him during his SVPA proceedings. Although plaintiff argues that the SVPA process is a civil action, this does not change the function of the defendants' role as an advocate for plaintiff. The SVPA proceeding is an adversarial process where the district attorney pursues a civil commitment, plaintiff is entitled to a jury trial in these proceedings, and to the appointment of counsel. Therefore, the court finds defendants were acting on behalf of plaintiff during his commitment proceedings while he was confined in the county jail and were not acting under color of state law.

Plaintiff also alleges that these defendants conspired with defendant Overstreet and the County Board of Supervisors to treat him differently than other individuals detained under other civil statutory schemes. Plaintiff claims that these defendants had personal knowledge of plaintiff's conditions of confinement and condoned the confinement by "refusing to contest plaintiff's imprisonment in the county correctional prison." FAC at 12. As set forth above, the court finds that this conclusory allegation of a conspiracy is not sufficient under § 1983. Therefore, defendants Vaughn, Valeros, and Kennedy are entitled to summary judgment as a matter of law.

**5.     Claims Against Defendants Ryan, King, and Vasquez**

Defendants Ryan, former Chief of Correction; King, former Main Jail Commander Captain; and Vasquez, former Lieutenant, are sued in their official capacities and defendants argue that they are entitled to summary judgment based upon the court's prior order granting summary judgment to the County of Santa Clara and Board of Supervisors. Defs. Mem. at 6-8. Defendants attempt to distinguish Jones v. Blanas from the instant case, asserting that in Jones the detainee was under more restrictive conditions where he was completely cut off from recreational activities, religious services, and physical access to the law library, where as here plaintiff was not completely cut off from these activities. Defs. Mot at 7, n.3. Defendants also maintain that plaintiff could have asked for a waiver that would have allowed him to be housed in the general population instead of administrative segregation, therefore allowing him more

time for recreation and other activities.  Id.; Affidavit of Sergeant Mitchell Conner in Support of County's Reply to Opp. to Summ. Judg., ¶ 7.  Defendants allege that Plaintiff did not request such waiver because he believed that he should not be housed in the county jail and would be conceding that his detention in jail is appropriate.  Id. at ¶ 9.  Irrespective of defendants' arguments distinguishing Jones, the Jones court found that Jones' detention in segregation "T-Sep" was substantially more restrictive than the general population and that the general inmate population was also "excessive" for a civil detainee.  Therefore, it is not dispositive that plaintiff here could have requested placement in the general jail population.

As defendants rely on the court's prior ruling to support their argument, the court DENIES summary judgment under Jones v. Blanas, 393 F.3d at 935, as to defendants Ryan, King, and Vasquez, as to plaintiff's due process and equal protection claims based upon plaintiff's detention with the general prison population in the county jail while awaiting commitment proceedings.  The court GRANTS summary judgment in favor of defendants Ryan, King and Vasquez as to plaintiff's equal protection claim of differential treatment compared to civil detainees under the Lanterman-Petris-Short Act and plaintiff's additional claims in the first amended complaint.[1]

### 6. Claims Against Correctional Officer West

#### a. Housing Classification

Plaintiff's claims against defendant West are based on plaintiff's placement in the general population, and subject to the same conditions as criminal detainees, while plaintiff awaited commitment proceedings.

---

[1] In their reply brief, defendants raise a new argument that they are entitled to qualified immunity.  Defendants may not raise new arguments for the first time in a reply brief, as this deprives plaintiff of an opportunity to respond.  Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007).  In any event, defendants have not established that it would not have been be clear to a reasonable jail official at the time that confining a civil detainee along with and under the same conditions as general population criminal detainees in the county jail amounted to punishment that could infringe on his constitutional rights.  See Hydrick v. Hunter, 500 F.3d 978, 983 (9th Cir. 2007) (any lack of clarity about how much more extensive the rights of SVPs than ordinary inmates are does not lead to the conclusion that defendants are entitled to qualified immunity).

1    Defendants have presented evidence that West, who is merely a correctional officer, did
2    not have the authority to determine the housing classification or assignments of civil detainees or
3    other inmates at the jail. (Sepulveda Decl. at ¶ 3). Plaintiff has presented no evidence to the
4    contrary. Rather, he argues that West is liable because he is an employee of the "governmental
5    agency," i.e. the county, that subjected him to the improper jail conditions. Plaintiff provides no
6    authority for such a novel theory of liability, and the court is aware of none.

7    To state a claim under § 1983, a plaintiff must set forth specific facts as to each
8    individual defendant's conduct that proximately caused a violation of his rights. Leer v.
9    Murphy, 844 F.2d 628, 634 (9th Cir. 1988). Only those individual members of the government
10   agency who actually engage in unlawful conduct can be held liable. See Monell v. Dep't of
11   Social Servs., 436 U.S. 658, 690 (1978) (rejecting concept of respondeat superior liability in §
12   1983 context and requiring individual liability for constitutional violation); Taylor v. List, 880
13   F.2d 1040, 1045 (9th Cir. 1989) (holding personal participation required for finding of
14   supervisorial liability based on alleged constitutional violations); see also Chuman v. Wright, 76
15   F.3d 292, 294-95 (9th Cir. 1996) (holding instruction permitting jury to find individual liable as
16   member of team, without any showing of individual wrongdoing, is improper).

17   To the extent defendant West had any say in plaintiff's placement in the general
18   population, he did not proximately cause the alleged constitutional violations that are alleged to
19   have stemmed from such placement. As plaintiff has presented no evidence contradicting
20   defendants' evidence that West had not authority over plaintiff's housing placement, there is no
21   genuine issue of material fact with respect to whether he caused any of the constitutional
22   violations claimed by plaintiff with respect to such placement. Accordingly, defendant West's
23   motion for summary judgment is GRANTED with respect to plaintiff's housing classification
24   claims.

25            b.    <u>Law Library Access</u>

26   Plaintiff alleges that Officer West denied him access to the jail law library in May 2000.
27   Defendants contend that plaintiff's allegation fails to state a constitutional claim because this
28

one-time denial of access to the law library did not hinder plaintiff from pursing his legal claims. Prisoners have a constitutional right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 350 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977). To establish a claim for any violation of the right of access to the courts, the prisoner must prove that there was an inadequacy in the prison's legal access program that caused him an actual injury. Lewis, 518 U.S. at 350-55. To prove an actual injury, the prisoner must show that the inadequacy in the prison's program hindered his efforts to pursue a non-frivolous claim concerning his conviction or conditions of confinement. Id. at 354-55. The right of access to the court is limited to the initiation of a court action. The state is not required to enable the prisoner to discover grievances or to litigate effectively once in court. Lewis, 518 U.S. at 354. Once he identifies the inadequacy in the program, the prisoner must demonstrate that the alleged shortcomings in the program hindered his efforts to pursue a legal claim. Id. at 351. Examples of impermissible hindrances include: a prisoner whose complaint was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known; and a prisoner who had "suffered arguably actionable harm" that he wished to bring to the attention of the court, but was so stymied by the inadequacies of the library that he was unable even to file a complaint. Id.; see, e.g., Jones v. Blanas, 393 F.3d at 936 (agreeing with district court that prisoner "did not allege injury, such as inability to file a complaint or defend against a charge, stemming from the restrictions on his access to the law library").

In his opposition, plaintiff concedes that summary judgment should be granted on his claim for denial of access to the law library because he was not injured in order to give rise to a constitutional violation. Pl.'s Opp. at 8. Therefore, defendant West is entitled to summary judgment as to this claim.

**7.  Claims Against Defendants Smith and Carter**

Plaintiff alleges that defendants Smith and Carter entered his cell on May 14, 2000, and personally assaulted him by "pulling him up out of bed twisting plaintiff's left arm until it swelled up." FAC 15. Plaintiff also alleges that defendants handcuffed plaintiff making marks

on his wrists and then personally refused to provide plaintiff with medical treatment. Id. Defendants argue that the alleged use of force was de minimis and therefore plaintiff fails to state a cognizable claim for excessive force. Plaintiff contends that defendants incorrectly applied the excessive force standard under the Eighth Amendment, when here the Fourteenth Amendment should be used to evaluate his excessive force claim.

At the time of the incident in question, plaintiff was a civil detainee at the Santa Clara County Jail. Therefore, the claim of excessive force must be analyzed under the Due Process Clause of the Fourteenth Amendment. Youngberg v. Romeo, 457 U.S. 307 321-22 (1982). Under the Due Process Clause, persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish. Id. at 321-22. Such persons retain substantive liberty interests, which include at least the right to adequate food, shelter, clothing and medical care, safe conditions of confinement, and freedom from unnecessary bodily restraint. Id. at 315-16.

To determine whether the nature and extent of an infringement of one of these liberty interests rises to the level of a due process violation, a court must balance the individual's liberty interest against the relevant state interests, as measured by the state's asserted reasons for restraining the individual. Youngberg, 457 U.S. at 320-21; see also Seling v. Young, 531 U.S. 250, 265 (2001) ("[D]ue process requires that the conditions and duration of confinement under [a state civil commitment statute] bear some reasonable relation to the purpose for which persons are committed."). The touchstone of due process is protection of the individual against arbitrary action of government in its exercise of power without any reasonable justification in the service of a legitimate governmental objective. See County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998). To prevail on a Fourteenth Amendment claim regarding conditions of confinement, neither a civilly-committed person nor a detainee awaiting civil commitment proceedings need prove deliberate indifference on the part of government officials. Jones v. Blanas, 393 F.3d at 933-34.

Defendants contend that plaintiff fails to demonstrate that he suffered more than a de

minimis injury. Defs.' Mem. at 12. However, even under the Eighth Amendment standard it is not necessary that a prisoner have suffered significant injury in order to prevail on an § 1983 claim for use of excessive force. See, e.g, Hudson v. Macmillan, 503 U.S. 1, 9 (1992). It is true that "not every push or shove . . . violates [a prisoner's] constitutional rights." Id. at 9 (citation omitted). However, there is a split in the circuits on whether a prisoner must prove that he suffered more than a de minimis injury in order to prevail on an excessive force claim. Compare Brooks v. Kyler, 204 F.3d 102, 108 (3rd Cir. 2000) ("[A]bsence of objective proof of non-de minimis injury does not alone warrant dismissal.") and Moore v. Holbrook, 2 F.3d 697, 700 (6th Cir. 1993) ("No actual injury needs to be proven to state a viable Eighth Amendment claim.") with Gomez v. Chandler, 163 F.3d 921, 924 (5th Cir. 1999) ("[T]o support an Eighth Amendment excessive force claim a prisoner must have suffered from the excessive force a more than de minimis injury.") and Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc) (plaintiff must show more than de minimis injury), cert. denied, 513 U.S. 1114 (1995). Although the Ninth Circuit has not addressed the issue, it has strongly suggested that a prisoner need only prove that the use of physical force was more than de minimis. See Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (clarifying that in embracing physical injury standard under 28 U.S.C. § 1997e(e) adopted by several circuits, Ninth Circuit does not subscribe to reasoning of some of those circuits that Eighth Amendment claims require that "the injury must be more than de minimis;" standard used for Eighth Amendment excessive force claims only examines whether the use of physical force is more than de minimis).

   According to plaintiff, defendants Smith and Carter entered his cell at approximately 2:00 a.m. while he was laying in bed asleep. Plaintiff's Decl. in support of Opposition to Defendants' Summary Judgment at 2. Defendants turned on the light, and pulled him out of bed twisting his left arm until it swelled up. Defendants grabbed plaintiff's hands, placing his left hand in some type of hand lock and began to twist his left hand behind his back in an upward motion. Defendant Smith grabbed plaintiff's right hand and did the same action. Defendants then handcuffed plaintiff resulting in extreme pain to his wrists. As defendants continued to

twist both of plaintiff's arms, they took him out of his cell and threw him on a couch face down. Id. As a result, plaintiff suffered injuries to both his left arm which swelled up and handcuff marks on both of his wrists. Plaintiff claims that he did not physically or verbally threaten the defendants, nor that he was yelling or disrupting the unit. After this incident, defendants placed plaintiff in cell 3. Plaintiff requested medical attention for his arm and wrists, which was repeatedly ignored by defendants Smith and Carter for approximately thirty minutes. Eventually, plaintiff received medical treatment when a Sergeant arrived to treat another prisoner's emergency medical condition. Plaintiff states that he never told Lieutenant Dortch that defendant Smith "did not do anything out of line." Id. at 3.

Defendants agree that plaintiff received medical treatment on May 14, 2000 for a minor injury to his left wrist. His left wrist was slightly swollen and according to the officers and plaintiff, the injury was sustained due to tight handcuffs. Resp. Mem., Exh. F (Affidavit of Carmen Gonzales, plaintiff's medical history sheet and progress notes). Plaintiff was given an ice pack and Tylenol. The next day, plaintiff was treated by a doctor, who noted that plaintiff indicated he had twisted his wrist but that he was feeling better. Id.

Plaintiff filed an inmate grievance concerning the May 14, 2000 incident alleging that he was assaulted by Officer Smith and "another black male officer." Defs.' Mem., Affidavit of Captain Sepulveda, Exh. A (plaintiff's grievance form). An investigation of the incident was conducted by Lieutenant Dortch, the Watch Commander for C Team at the jail. Lieutenant Dortch concluded that plaintiff refused to move from his cell as requested by Officer Smith and "was loud and disruptive in the module and refused to follow orders from Officer Smith." Defs.' Mem., Affidavit of Captain Sepulveda, Exh. D (Dortch Memorandum concerning May 14, 2000 incident). Dortch concludes that plaintiff was placed in rear wrist locks pending placement of handcuffs, but his "arms were not twisted in such a manner that cause him extreme pain." Dortch states that Officers Smith and Carter indicated that plaintiff did not resist so there was no justification for inflicting pain on plaintiff Id. Finally, Dortch states that although plaintiff made allegations of physical abuse, he admitted to Dortch that defendant Smith "didn't do anything

1  out of line." Id.

2  In their reply, defendants note that plaintiff does not dispute that he failed to follow
3  orders from defendant Smith to move from his cell. Defs. Reply at 15. Therefore, defendants
4  contend that plaintiff's refusal led to him being placed in rear wrist locks, pending placement of
5  handcuffs, thus the use of force was de minimis and applied in a good-faith effort to maintain or
6  restore discipline. Id. However, the court must accept plaintiff's factual allegations as true for
7  purposes of summary judgment. Plaintiff's refusal to exit his cell does not justify the alleged
8  physical force used against plaintiff during the incident. Defendants Smith and Carter admit that
9  plaintiff did not resist in any way. Resp. Mem., Affidavit of Captain Sepulveda, Exh. D.
10 Plaintiff alleges that he did not physically or verbally threaten Smith or Carter, nor did he do any
11 loud yelling or cause any disruption of the unit. Therefore, plaintiff's actions amounted to
12 nothing more than passive resistance. Even if defendants believed force was needed under these
13 circumstances, the extent of force that defendants exerted on plaintiff was not proportional to
14 what a reasonable officer would deem necessary in a similar situation, in which the prisoner
15 refuses to follow instructions to exit his cell. The use of force here was more than de minimis,
16 regardless of the seriousness of the injuries plaintiff sustained. The court cannot grant judgment
17 in defendants' favor without accepting defendants' version and disbelieving plaintiff's version of
18 the events that transpired. Plaintiff's complaint and declaration, taken as true, sets forth a
19 cognizable claim for excessive force under the Eighth Amendment, and therefore satisfies the
20 requirements applicable under the Fourteenth Amendment standard for civil detainees'
21 conditions of confinement.

22 C.   Referral to Pro Se Prisoner Settlement Program

23 The Northern District of California has established a Pro Se Prisoner Settlement
24 Program. Certain prisoner civil rights cases may be referred to a neutral magistrate judge for
25 prisoner settlement proceedings. The proceedings will consist of one or more conferences as
26 determined by Magistrate Judge Nandor Vadas. The conferences shall be conducted with
27 defendants, or the representative for defendants, attending by videoconferencing if they so
28

Order Reopening Case and Vacating Judgment; Granting in Part and Denying in Part Plaintiff's Motion for Relief; Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Order Referring Case to Pro Se Prisoner Settlement Program; Instructions to Clerk
P:\pro-se\sj.rmw\cr.00\Litmon345msjrefer    16

1 choose.

2     The claims that have survived defendants' motions for summary judgment, and now
3 remain in this action are: (1) claims for the violation of plaintiff's rights to due process and equal
4 protection based upon his detention with the general prison population in the county jail while
5 awaiting commitment proceedings, as to defendants Santa Clara County, Ryan, King, and
6 Vasquez; and (2) claims for the violation of plaintiff's right to due process based on the use of
7 force against him on May 14, 2000, as to defendants Smith and Carter.

8     Prior to setting this matter for trial on these claims, and appointing pro bono counsel to
9 represent plaintiff for that purpose, the court finds good cause to refer this matter to Magistrate
10 Judge Vadas pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on
11 the surviving claims set forth above. If these settlement proceedings to do not resolve this
12 matter, the court will then set this matter for trial and refer the case to the Pro Bono Litigation
13 Project for location of pro bono counsel, who will then be appointed to represent plaintiff.

## CONCLUSION

15   1.    The clerk of court shall REOPEN the instant case.

16   2.    Plaintiff's motion for relief (docket no. 105) is GRANTED in part and DENIED
17 in part as set forth above. The court VACATES the April 2, 2003 judgment in favor of
18 Defendant Santa Clara County.

19   3.    Defendants' motion for summary judgment (docket no. 106) is GRANTED
20 IN PART and DENIED IN PART, as set forth above.

21     The motion is GRANTED as to all claims against defendants Overstreet, Vaughn,
22 Valeros, Kennedy and West.

23     The motion for summary judgment is DENIED as to the following claims: (1) the claims
24 for the violation of plaintiff's rights to due process and equal protection based upon his detention
25 with the general prison population in the county jail while awaiting commitment proceedings, as
26 to defendants Santa Clara County, Ryan, King, and Vasquez; and (2) the claims for the violation
27 of plaintiff's right to due process based on the use of force against him on May 14, 2000, as to

28 Order Reopening Case and Vacating Judgment; Granting in Part and Denying in Part Plaintiff's Motion for Relief; Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Order Referring Case to Pro Se Prisoner Settlement Program; Instructions to Clerk
P:\pro-se\sj.rmw\cr.00\Litmon345msjrefer

17

1  defendants Smith and Carter.  The motion for summary judgment is GRANTED as to all other
2  claims in the First Amended Complaint against defendant Santa Clara County, Ryan, King,
3  Vasquez, Smith and Carter

4      4.    The instant case is REFERRED to Magistrate Judge Vadas pursuant to the Pro Se
5  Prisoner Settlement Program for settlement proceedings on the remaining claims in this action,
6  as described above.  The proceedings shall take place **within ninety (90) days** of the date of this
7  order.  Magistrate Judge Vadas shall coordinate a time and date for a settlement conference with
8  all interested parties or their representatives and, **within ten (10) days** after the conclusion of the
9  settlement proceedings, file with the court a report regarding the prisoner settlement proceedings

10      5.    The clerk of court mail a copy of the court file, including a copy of this order, to
11  Magistrate Judge Vadas in Eureka, California.

12      6.    The instant case is STAYED pending the settlement conference proceedings.

13      7.    It is plaintiff's responsibility to prosecute this case.  All communications by the
14  plaintiff with the court must be served on defendants, or defendants' counsel once counsel has
15  been designated, by mailing a true copy of the document to defendant or defendants' counsel.
16  Plaintiff must keep the court and the parties informed of any change of address and must comply
17  with the court's orders in a timely fashion.  Failure to do so may result in the dismissal of this
18  action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

19    This order terminates Docket Nos. 105, 106, and any other pending motions in this
20  action.

21    IT IS SO ORDERED.

22  DATED: __5/27/08_____     *Ronald M. Whyte*
23                         RONALD M. WHYTE
                        United States District Judge